# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,
1030 15th Street NW, B255
Washington, DC 20005
                    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue NW
Washington, DC 20530

and

FEDERAL BUREAU OF
INVESTIGATION,
935 Pennsylvania Avenue NW
Washington, DC 20535
                    Defendants.

Civil Action No. 17-CV-718

## DECLARATION OF G. BRADLEY WEINSHEIMER

I, G. BRADLEY WEINSHEIMER, declare as follows:

　　　　1.　　　　I am the Acting Chief of Staff and the Director of Risk Management and Strategy

for the National Security Division ("NSD") of the United States Department of Justice ("DOJ" or

"Department").  NSD is a component of the Department which formally began operations on

October 2, 2006, by consolidating the resources of the Office of Intelligence Policy and Review

("OIPR")[1] and the Criminal Division's Counterterrorism Section ("CTS") and Counterespionage

Section (now known as the Counterintelligence and Export Control Section "CES").  I have

served as Director of Risk Management and Strategy since March 2016, prior to which time I

served as the Deputy Counsel in the DOJ's Office of Professional Responsibility from June 2011

---

[1] OIPR is now known as the Office of Intelligence ("OI").

until March 2016, and as an Assistant U.S. Attorney in the District of Columbia from June 1991 until June 2011.

2.      Among other responsibilities, in my capacity as the Director of Risk Management and Strategy, I supervise the Freedom of Information ("FOIA") and Declassification Unit ("NSD FOIA"), which is responsible for responding to requests for access to NSD records and information pursuant to the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974. I currently serve as the acting Director of NSD FOIA. Through the exercise of my official duties, I have become familiar with this action and the underlying FOIA requests. The statements contained in this declaration are based upon my personal knowledge and information provided to me in the course of my official duties.

3.      In addition, I have TOP SECRET original classification authority delegated to me by the Attorney General of the United States pursuant to Section 1.3(c) of Executive Order 13526. Therefore, I am authorized to conduct classification reviews and to make original classification and declassification decisions up to the TOP SECRET level. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in the course of performing my official duties.

4.      In a letter dated March 20, 2017, plaintiff, American Oversight stated, "the President of the United States, Donald Trump, asserted that the former President, Barack Obama, had placed wiretaps on Mr. Trump and entities or associates in Trump Tower for improper purposes during the course of the 2016 presidential campaign." Plaintiffs then requested the following:

(1)   All warrant applications or other records requesting a court to institute an intercept of telecommunications or a pen register trap and trace on electronic communications or

telecommunications in connection with presidential candidate Donald Trump, Trump Tower (located at 725 5th Avenue, New York, NY), entities housed in Trump Tower, or any person affiliated with Mr. Trump's campaign, whether paid or unpaid, between June 16, 2015, and the present, whether under the authority of the Foreign Intelligence Surveillance Act; Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended; or other authority.

(2)     Any court order or other document providing authority to institute or maintain such a requested wiretap, intercept, or pen register.

(3)     Any court order or other document rejecting such an application or request for authority for a wiretap, intercept, or pen register.

(4)     Any records logging or listing any such wiretaps, intercepts, or pen registers.

(5)     All communications, documents, or other material exchanged between DOJ or the FBI and Congress, or briefing papers or talking points prepared for congressional briefings, regarding the wiretaps, intercepts, or pen registers discussed, or records described, in Items 1-4, *supra.*

This request was assigned NSD FOI/PA #17-116.  A copy of this request is attached as Exhibit A.

5.      In an email dated, April 3, 2017, NSD FOIA issued a "Glomar response" by stating that it does not search for records in response to requests regarding the use or non-use of certain foreign intelligence gathering techniques in which the confirmation or denial of the existence of responsive records would, in and of itself, reveal information properly classified under Executive Order 13526.  A copy of this April 3, 2017, email is attached as Exhibit B. Plaintiffs appealed NSD's determination to the Department of Justice's Office of Information Policy ("OIP") on April 12, 2017.  A copy of this letter is attached as Exhibit C.  OIP affirmed NSD's determination in a letter dated April 13, 2017.  A copy of this determination is attached as Exhibit D.  Plaintiffs filed this lawsuit on April 19, 2017.

6.      On March 4, 2017, President Trump made a four-part post on Twitter, alleging that President Obama "had my 'wires tapped' in Trump Tower just before the victory."  During sworn testimony before the House Permanent Selection Committee on Intelligence ("HPSCI")

on March 20, 2017, then FBI Director James B. Comey was asked about this by Congressman

Schiff and responded:

With respect to the President's tweets about alleged wiretapping directed at him by the prior administration, I have no information that supports those tweets and we have looked carefully inside the FBI.  The Department of Justice has asked me to share with you that the answer is the same for the Department of Justice and all its components. The Department has no information that supports those tweets.

*See* Transcript of the House Permanent Select Committee on Intelligence Hearing on Russian

Interference in the 2016 U.S. Election, March 20, 2017.

https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/?utm_term=.b9f19a0cf9cf

(last accessed 6/12/2017).

      7.      Other than this public statement by then-Director Comey addressing this specific

assertion by the President, neither the FBI nor DOJ have publicly commented on or

acknowledged the existence or non-existence of any FISA, Title III, or other wiretaps "in

connection with presidential candidate Donald Trump, Trump Tower (located at 725 5th Avenue,

New York, NY), entities housed in Trump Tower, or any person affiliated with Mr. Trump's

campaign, whether paid or unpaid, between June 16, 2015, and the present."

      8.      As the preceding demonstrates, the Department of Justice – including NSD – has

no records responsive to Plaintiff's request inasmuch as it seeks records of alleged wiretapping

of then-Candidate Trump in Trump Tower by President Obama prior to the election, as

referenced in the March 4, 2017, tweet. *See id.*

      9.      Plaintiff's request, however, is broader than the subject of the March 4, 2017,

tweet.  As to whether any other records exist that are responsive to those portions of Plaintiff's

FOIA request that do not pertain to the President's March 4, 2017, tweet, NSD can neither

confirm nor deny the existence or non-existence of such responsive records, as explained below.

10.     FOIA Exemption (b)(1) protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13526 § 1.1(a) provides that information may be classified under the terms of this order only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in § 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage. Executive Order 13526 further states that, in response to a FOIA request, "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." Exec. Order 13526, § 3.6(a).

11.     A substantive response from NSD would necessarily reveal the existence or non-existence of responsive FISA-related records. This is because in general NSD does not maintain records of other types of wiretaps. NSD's only wiretap–related records for the specified date range in the request are FISA-related materials. NSD's criminal litigating units consist of CES and CTS. CES does not maintain records of wiretaps acquired pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended ("Title III"). CTS does not maintain records of any recent Title III wiretaps. All Title III wiretap applications are drafted and sought by other components within the Department of Justice.

12.    Pursuant to Exemption 1 of FOIA and Executive Order 13526, absent highly

unusual circumstances, NSD generally does not confirm or deny the existence of records

regarding any particular individual alleged to be pertinent to operational FISA work.  Pursuant to

the Department of Justice, National Security Information, Security Classification Guide (July

2012), the fact that a FISA application was applied for or used in a particular case is classified

national security information, as is identification of specific individuals or organizations who are

subjects of a national security investigation making use of a FISA warrant.

13.    Here, to disclose the existence or nonexistence of responsive documents in NSD

files would disclose whether or not particular individuals were pertinent to FISA applications

and warrants, thus disclosing information pertaining to intelligence sources and methods under

E.O. 13526 § 1.4(c)[2].

14.    Such disclosure would cause harm to national security because it permits hostile

intelligence services to use FOIA to acquire information about U.S. intelligence investigations.

Once a particular source or method or the fact of its use in a particular situation is discovered, its

continued usefulness may be degraded or impossible.

15.    Furthermore, information disclosed in response to a FOIA request becomes public

information.  Intelligence organizations and other adversaries are expert at acquiring and

analyzing information in the public domain.  Thus, information given to one FOIA requester will

be available to subsequent requesters and to foreign powers and their intelligence services.  If

NSD were to indicate that it maintains responsive information, these responses would provide

trained intelligence analysts with individual pieces of information that could be compiled into a

---

[2] Pursuant to Executive Order § 1.7(a), this information is not classified to (1) conceal violations of law, inefficiency, or administrative error, (2) prevent embarrassment to a person, organization, or agency (3) restrain competition, or (4) prevent or delay the release of information that does not require protection in the interest of the national security.

catalogue of FISA activities.  Intelligence services and other adversaries could use these

disclosures to discover which intelligence agents operating in this country were known to the

U.S. Government and which were not.  This information could be used to deploy

counterintelligence assets against the U.S. Government and impair U.S. intelligence collection.

16.     Conversely, revealing the absence of responsive records pertaining to particular

individuals would tend to indicate that persons within the scope of the request were not pertinent

to the approval of FISA applications.  That fact could be extremely valuable to foreign powers

and hostile intelligence services who could use it to carry out intelligence activities with the

knowledge that the United States Government is not monitoring certain people and may not even

suspect them.

17.     As a result, the best way for NSD to protect critical intelligence information and

minimize the harm to national security for the Government is to assert a Glomar response to

requests for information pertaining to operational FISA work.  To be credible and effective, the

NSD must use the Glomar response consistently in all cases where the existence or nonexistence

of records responsive to a FOIA request is a classified fact, as it is here, including instances in

which NSD does not possess records responsive to a particular request. If NSD were to invoke a

Glomar response only when it actually possessed responsive records, the Glomar response would

be interpreted as an admission that responsive records exist. This practice would reveal the very

information that NSD must protect in the interest of national security. If NSD were to possess

responsive records and acknowledged that, such an admission would provide hostile foreign

powers with access to additional, operationally valuable information about hypothetical U.S.

intelligence investigations and allow those powers to subvert those same hypothetical

investigations.  Further, if NSD does not possess responsive records and informed the public of

that fact, hostile foreign powers could use that fact to carry out activities against the United States with the knowledge the Government is not surveilling certain people.

18.     I have reviewed the Complaint, which quotes public statements made by President Donald J. Trump and former FBI Director James Comey.  These statements do not alter NSD's decision to neither confirm nor deny whether there are records responsive to those portions of the request that do not pertain to President Trump's March 4, 2017, tweets.  To my knowledge, no authorized Executive Branch official has officially disclosed such information, and its disclosure is reasonably expected to harm national security.

19.     Finally, Plaintiff requested records relating to the processing of this FOIA request and in particular records about NSD's search for records responsive to Plaintiff's wiretap request; in other words, records that did not exist at the time of Plaintiff's request and that exist only because of its request.  The normal cut-off date for responsive records for FOIA requests is the date on which searches were initiated.  See 28 C.F.R. § 16.4(a) ("In determining which records are responsive to a request, a component ordinarily will include only records in its possession as of the date it begins its search.").  However, alternate cut-off dates are permissible. *Id.*  Here, no search was conducted with respect to this request, so NSD used the date on which it began working on its response to this request – March 20, 2017 – as the alternate cut-off date. Because NSD did not start to create records about the processing of this request until the day it started working on the request, no responsive records existed or were in the possession of NSD as of the cut-off date for responsive records in this case.

## CONCLUSION

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of August 2017, Washington, DC

G. BRADLEY WEINSHEIMER