# *Exhibit A*



March 20, 2017

<u>VIA ELECTRONIC MAIL AND ELECTRONIC SUBMISSION PORTAL</u>

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843
Online Request via  https://efoia.fbi.gov

Arnetta Mallory
FOIA Initiatives Coordinator
National Security Division
Department of Justice
Room 6150, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Email:  nsdfoia@usdoj.gov

Amanda M. Jones
Acting Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Email:  crm.foia@usdoj.gov

**Re: Expedited Freedom of Information Act Request**

Dear Mr. Hardy, Ms. Mallory & Ms. Jones:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and Department of
Justice (DOJ) implementing regulations, 28 C.F.R. Part 16, American Oversight makes the
following request for records.

On March 4, 2017, the President of the United States, Donald Trump, asserted that the former
President, Barack Obama, had placed wiretaps on Mr. Trump and entities or associates in Trump
Tower for improper purposes during the course of the 2016 presidential campaign. This



acknowledgement by the President that his campaign and associates had been subject to wiretapping, whether lawfully or unlawfully, raises significant questions about the conduct of both Mr. Obama and Mr. Trump and his associates. Mr. Trump questioned whether it was "legal for a sitting President to be 'wire tapping' a race for president prior to an election";[1] compared Mr. Obama's asserted role in the wiretapping to Nixon, Watergate, and McCarthyism;[2] and described Mr. Obama as a "Bad (or sick) guy!"[3] When asked about the basis for Mr. Trump's assertions, the White House stated, "He's the president of the United States. He has information and intelligence that the rest of us do not."[4] American Oversight is seeking records relating to the wiretapping that Mr. Trump has acknowledged occurred to inform the public about these important allegations.

### Requested Records

American Oversight requests that DOJ produce the following within twenty business days and seeks expedited review of this request for the reasons identified below:

1. All warrant applications or other records requesting a court to institute an intercept of telecommunications or a pen register trap and trace on electronic communications or telecommunications in connection with presidential candidate Donald Trump, Trump Tower (located at 725 5ᵗʰ Avenue, New York, NY), entities housed in Trump Tower, or any person affiliated with Mr. Trump's campaign, whether paid or unpaid, between June 16, 2015, and the present, whether under the authority of the Foreign Intelligence Surveillance Act; Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended; or other authority.

2. Any court order or other document providing authority to institute or maintain such a requested wiretap, intercept, or pen register.

3. Any court order or other document rejecting such an application or request for authority for a wiretap, intercept, or pen register.

4. Any records logging or listing any such wiretaps, intercepts, or pen registers.

5. All communications, documents, or other material exchanged between DOJ or the FBI and Congress, or briefing papers or talking points prepared for congressional briefings,

---

[1] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:49 AM), https://twitter.com/realDonaldTrump/status/837993273679560704.

[2] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 4:02 AM), https://twitter.com/realDonaldTrump/status/837996746236182529 (Nixon and Watergate); Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:35 AM), https://twitter.com/realDonaldTrump/status/837989835818287106 (McCarthyism).

[3] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 4:02 AM), https://twitter.com/realDonaldTrump/status/837996746236182529.

[4] *White House Officials Stand By Trump Wiretapping Claim*, FoxNews.com, Mar. 6, 2017, http://www.foxnews.com/politics/2017/03/06/white-house-officials-stand-by-trump-wiretapping-claim.html.

DOJ-17-0035

regarding the wiretaps, intercepts, or pen registers discussed, or records described, in Items 1–4, *supra*.

Please provide all responsive records from June 1, 2015, to the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and  locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

In processing this request, please note that the President of the United States has officially acknowledged that the federal government instituted wiretaps on communications at Trump Tower.  Specifically, the President stated that he "[j]ust found out that Obama had my 'wires tapped' in Trump Tower just before the victory. Nothing found."[5] The President further elaborated, "[i]s it legal for a sitting President to be 'wire tapping' a race for president prior to an election? Turned down by court earlier.";[6] "I'd bet a good lawyer could make a great case out of the fact that President Obama was tapping my phones in October, just prior to Election!";[7] and "How low has President Obama gone to tapp [sic] my phones during the very sacred election process."[8] In light of the official acknowledgement of these activities by the President, the government may not rely on exemptions permitting the withholding of material that is classified, protected by statute, or related to an ongoing law enforcement matter. If DOJ does rely on an exemption to withhold records, whether under Exemption 1 (classified information), Exemption 3 (statutorily protected information), Exemption 7 (law enforcement information); or any so-called "Glomar" response under *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976), and its progeny, American Oversight will challenge those withholdings in court in light of the President's acknowledgment.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail

---

[5] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:35 AM), https://twitter.com/realDonaldTrump/status/837989835818287106.

[6] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:49 AM), https://twitter.com/realDonaldTrump/status/837993273679560704.

[7] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:52 AM), https://twitter.com/realdonaldtrump/status/837994257566863360.

[8] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 4:02 AM), https://twitter.com/realDonaldTrump/status/837996746236182529.

DOJ-17-0035

messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[9] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.**[10]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DOJ's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[11] **Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but DOJ's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that DOJ use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still**

---

[9] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[10] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[11] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), *available at* https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), *available at* https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

DOJ-17-0035

required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[12] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[13] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[14] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[15]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[16] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, DOJ is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and the Department can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American

---

[12] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

[13] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

[14] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).

[15] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[16] *Mead Data Central*, 566 F.2d at 261.

DOJ-17-0035

Oversight, 1030 15ᵗʰ Street, NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on rolling basis.

Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k), American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii).[17]

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding" of government operations and is not "primarily in the commercial interest of the requester."[18] The disclosure of the information sought under this request will document and reveal the operations of the federal government, including how public funds are spent and how officials conduct the public's business.

Allegations of Russian interference in the U.S. election and the Trump campaign's closeness to Russian officials has been the subject of significant media coverage. On August 27, 2016, then-Senate Minority Leader Harry Reid wrote to F.B.I. Director James Comey asking Mr. Comey to investigate evidence of planned tampering by the Russians.[19] Then on September 8, 2016, the same day that then-Senator Jeff Sessions reportedly held a one-on-one meeting with Russian Ambassador Sergey Kislyak, the *New York Times* published an article quoting Mr. Sessions in which Mr. Trump's campaign reaffirmed its embrace of Russian president Vladimir Putin.[20] More recently, a week prior to Mr. Trump's inauguration, reports surfaced that Michael T. Flynn, Mr. Trump's first National Security Advisor, spoke with Mr. Kislyak the day before the Obama administration imposed sanctions on Russia as retaliation for the election interference.[21]

---

[17] *See, e.g., McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

[18] 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.10(k).

[19] David E. Sanger, *Harry Reid Cites Evidence of Russian Tampering in U.S. Vote, and Seeks F.B.I. Inquiry*, N.Y. TIMES, Aug. 29, 2016, https://www.nytimes.com/2016/08/30/us/politics/harry-reid-russia-tampering-election-fbi.html.

[20] Jonathan Martin & Amy Chozick, *Donald Trump's Campaign Stands By Embrace of Putin*, N.Y. TIMES, Sept. 8, 2016, https://www.nytimes.com/2016/09/09/us/politics/hillary-clinton-donald-trump-putin.html.

[21] Julie Hirschfeld Davis et al., *Trump National Security Adviser Called Russian Envoy Day Before Sanctions Were Imposed*, N.Y. TIMES, Jan. 13, 2017,
https://www.nytimes.com/2017/01/13/us/politics/donald-trump-transition.html.

DOJ-17-0035

On March 4, 2017, Mr. Trump asserted that former President Obama had placed wiretaps on Mr. Trump and entities in Trump Tower during the course of the 2016 presidential campaign for improper purposes. Mr. Trump questioned whether it was "legal for a sitting President to be 'wire tapping' a race for president prior to an election";[22] compared Mr. Obama's asserted role in the wiretapping to Nixon, Watergate, and McCarthyism;[23] and described Mr. Obama as a "Bad (or sick) guy!"[24] Disclosure of the requested information is in the public interest because it would inform the public regarding these very serious allegations about the conduct of both the current and former presidents and their staffs.

This request is primarily and fundamentally for non-commercial purposes. As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight will use the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight will also make materials it gathers available on our public website.

Accordingly, American Oversight qualifies for a fee waiver.

<u>Application for Expedited Processing</u>

Pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 28 C.F.R. § 16.5(b), (e)(1)(iv), American Oversight requests that the Department of Justice expedite the processing of this request.

I certify to be true and correct to the best of my knowledge and belief, that there is widespread and exceptional media interest and there exist possible questions concerning the government's integrity, which affect public confidence. There is widespread and exceptional media interest in Mr. Trump's allegations that Mr. Obama directed the tapping of the communications of Mr. Trump and persons affiliated with his campaign for purposes related to the 2016 presidential election,[25] and in the allegations that Mr. Trump and his campaign affiliates had contacts with

---

[22] Donald Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 3:49 AM),
https://twitter.com/realDonaldTrump/status/837993273679560704.

[23] Donald Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 4:02 AM),
https://twitter.com/realDonaldTrump/status/837996746236182529 (Nixon and Watergate);
Donald Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 3:35 AM),
https://twitter.com/realDonaldTrump/status/837989835818287106 (McCarthyism).

[24] Donald Trump (@realDonaldTrump), Twitter (Mar. 4, 2017, 4:02 AM),
https://twitter.com/realDonaldTrump/status/837996746236182529.

[25] *See, e.g.,* Philip Rucker et al., *Trump Accuses Obama of 'Nixon/Watergate' Wiretap – But Offers No Evidence,* Wash. Post, Mar. 4, 2017, https://www.washingtonpost.com/politics/trump-accuses-obama-of-nixonwatergate-wiretap--but-offers-no-evidence/2017/03/04/1ddc35e6-0114-11e7-8ebe-6e0dbe4f2bca_story.html?hpid=hp_hp-top-table-main_trumpwiretap-

DOJ-17-0035

Russian officials, and that those contacts are under investigation.[26] The requested documents will shed light on these issues of considerable interest to the public. Both the allegation that Mr. Obama improperly instituted wiretaps for electoral purposes and the possibility that investigations established national security or criminal bases to seek court ordered wiretapping of Mr. Trump and persons affiliated with his campaign similarly raise questions about whether both the current and the former president or their associates acted unlawfully and about the very integrity of the 2016 presidential election.  These are self-evidently matters "in which there exist possible questions about the government's integrity that affect public confidence."[27]

Accordingly, American Oversight's request satisfies the criteria for expedition.

Conclusion

We share a common mission to promote transparency in government. American Oversight looks forward to working with you on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact

---

8pm%3Ahomepage%2Fstory&tid=a_inl&utm_term=.c2ab0fcc0033; Elliot Smilowitz, *Trump Accuses Obama of Wiretapping Trump Tower* (Mar. 4, 2017, 6:51 AM),
http://thehill.com/homenews/administration/322337-trump-accuses-obama-of-wiretapping-trump-tower; Jeremy Diamond et al., *Trump's Baseless Wiretap Claim*, CNN (Mar. 5, 2017, 6:59 AM), http://www.cnn.com/2017/03/04/politics/trump-obama-wiretap-tweet/.
[26] *See, e.g.*, Adam Entous et al., *Sessions Met with Russian Envoy Twice Last Year, Encounters He Later Did Not Disclose*," WASH. POST, Mar. 1, 2017,
https://www.washingtonpost.com/world/national-security/sessions-spoke-twice-with-russian-ambassador-during-trumps-presidential-campaign-justice-officials-say/2017/03/01/77205eda-feac-11e6-99b4-9e613afeb09f_story.html; Brooke Seipel, *Bush's Ethics Lawyer On Sessions Talks with Russia Ambassador: 'Good Way To Go To Jail'*, THE HILL BLOG (Mar. 1, 2017, 10:34 PM), http://thehill.com/blogs/blog-briefing-room/news/321936-ethics-lawyer-to-george-w-bush-on-sessions-talks-with-russa; David E. Sanger, *Harry Reid Cites Evidence of Russian Tampering in U.S. Vote, and Seeks F.B.I. Inquiry*, N.Y. TIMES, Aug. 29, 2016,
https://www.nytimes.com/2016/08/30/us/politics/harry-reid-russia-tampering-election-fbi.html; Julie Hirschfeld Davis et al., *Trump National Security Adviser Called Russian Envoy Day Before Sanctions Were Imposed*, N.Y. TIMES, Jan. 13, 2017,
https://www.nytimes.com/2017/01/13/us/politics/donald-trump-transition.html; Margaret Hartmann, *What We Know about the Investigations Into Trump's Russia Scandal*, N.Y. MAG. (Mar. 7, 2017), http://nymag.com/daily/intelligencer/2017/03/what-we-know-about-the-probes-into-trumps-russia-scandal.html; Karen Demirjian et al., *Attorney General Jeff Sessions Will Recuse Himself from Any Probe Related to 2016 Presidential Campaign*, WASH. POST (Mar. 2, 2017), https://www.washingtonpost.com/powerpost/top-gop-lawmaker-calls-on-sessions-to-recuse-himself-from-russia-investigation/2017/03/02/148c07ac-ff46-11e6-8ebe-6e0dbe4f2bca_story.html?hpid=hp_hp-top-table-main_gopreax-840a%3Ahomepage%2Fstory&tid=ptv_rellink&utm_term=.1edd2d00bd99.
[27] 28 C.F.R. § 16.5(e)(1)(iv).

DOJ-17-0035

Sara Creighton at foia@americanoversight.org or 202-869-5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

cc:     Sarah Isgur Flores, Director, Office of Public Affairs

9

DOJ-17-0035

# *Exhibit B*

**Mallory, Arnetta (NSD)**

| | |
|---|---|
| **From:** | NSDFOIA (NSD) |
| **Sent:** | Monday, April 03, 2017 11:32 AM |
| **To:** | American Oversight FOIA |
| **Subject:** | NSD FOIA #17-116 |

Sara Creighton
1030 15th Street N.W.
Suite B255
Washington, DC 20005

                              FOIA/PA #17-116

Dear: Ms. Creighton:

   This is to acknowledge your email dated March 20, 2017, pertaining 1. All warrant applications or other records requesting a court to institute an intercept of telecommunications or a pen register trap and trace on electronic communications or telecommunications in connection with presidential candidate Donald Trump, Trump Tower (located at 725 5th Avenue, New York, NY), entities housed in Trump Tower, or any person affiliated with Mr. Trump's campaign, whether paid or unpaid, between June 16, 2015, and the present, whether under the authority of the Foreign Intelligence Surveillance Act; Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended; or other authority. 2. Any court order or other document providing authority to institute or maintain such a requested wiretap, intercept, or pen register. 3. Any court order or other document rejecting such an application or request for authority for a wiretap, intercept, or pen register. 4. Any records logging or listing any such wiretaps, intercepts, or pen registers. 5. All communications, documents, or other material exchanged between DOJ or the FBI and Congress, or briefing papers or talking points prepared for congressional briefings.  Our FOIA office received your Freedom of Information request on March 20, 2017.

        For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

        You have requested expedited processing of your request under the Department of Justice standards permitting expedition when a requester demonstrates a "compelling need."  A compelling need is defined as follows:

1.   Failure to obtain requested records on an expedited basis could reasonably he expected to pose an imminent threat to the life or physical safety of an individual; or

2.   With respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

   You have not demonstrated that there is a particular urgency to inform the public about an actual or alleged federal government activity.  Therefore, we have determined that your request for expedited processing is denied.

        Also, you requested a waiver of processing fees.  Your reason for a fee waiver does meet the fee waiver threshold.  Therefore, your request for a fee waiver has been granted.

        The National Security Division (NSD) maintains operational files which document requests for and approvals of authority for the U.S. Intelligence Community to conduct certain foreign intelligence activities.

tend to reveal properly classified information regarding whether particular surveillance techniques have or have not been used by the U.S. Intelligence Community.  Accordingly, we can neither confirm nor deny the existence of records in these files responsive to your request pursuant to 5 U.S.C. 552(b)(1).

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,
Arnetta Mallory
Government Information Specialist

**From:** American Oversight FOIA [mailto:foia@americanoversight.org]
**Sent:** Monday, March 20, 2017 12:44 PM
**To:** NSDFOIA (NSD) <Ex_NSDFoia@jmd.usdoj.gov>; CRM FOIA <CRM.FOIA@CRM.USDOJ.GOV>
**Subject:** Expedited FOIA Request DOJ-17-0035

FOIA Officers:

Please find attached a request for records under the Freedom of Information Act. American Oversight requests expedition pursuant to 28 C.F.R. § 16.5(e)(1)(iv); accordingly, please forward a copy to Sarah Isgur Flores, Director, Office of Public Affairs.

Sincerely,
Sara Creighton
American Oversight

DOJ-17-0035

# *Exhibit C*



April 12, 2017

<u>VIA ONLINE PORTAL</u>

Melanie Ann Pustay
Director, Office of Information Policy
U.S. Department of Justice
1425 New York Avenue NW
Suite 11050
Washington, DC 20530-0001
FOIAOnline

**Re: Freedom of Information Act Appeal for NSD Request #17-116**

Dear Ms. Pustay:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6)(A), and Department of
Justice (DOJ) regulations at 28 C.F.R. § 16.8, American Oversight submits the following
administrative appeal.

<u>Background</u>

On March 20, 2017, American Oversight submitted a FOIA request (the AO FOIA Request) to
the DOJ National Security Division (NSD) seeking a variety of records relating to the use of FISA
or other authorities to wiretap candidate Donald Trump, his associates, or Trump Tower. *See*
Appendix A. The AO FOIA Request sought expedited review.

On April 3, 2017, NSD responded to this request. *See* Appendix B. NSD assigned the request
tracking number FOIA/PA #17-116. NSD denied our request for expedited processing, granted
our request for a fee waiver, and then responded that the agency could "neither confirm nor deny
the existence of records" responsive to our request.

American Oversight hereby appeals the denial of expedited processing as well as the agency's use
of a so-called "Glomar" response that neither confirmed nor denied the existence of responsive
records.

<u>Appeal of DOJ's Denial of Expedited Processing</u>

DOJ regulations provide for expedited processing of FOIA requests when one of four factors is
satisfied:



(i)  Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

(ii)  An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;

(iii)  The loss of substantial due process rights; or

(iv)  A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1)(i)-(iv).

American Oversight requested expedited processing of its request under prong (iv) above, asserting that this request involves a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. Because American Oversight sought expedition under 28 C.F.R. § 16.5(e)(1)(iv), we asked that the request be forwarded to Sarah Isgur Flores, the Director of the Office of Public Affairs, as required by 28 C.F.R. §  16.5(e)(2).

In its response to American Oversight's request, the NSD applied a different standard than the one set out above. The NSD stated that DOJ standards permit expedition if "(1) Failure to obtain requested records on an expedited basis could reasonably he [sic] expected to pose an imminent threat to the life or physical safety of an individual; or (2) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." In other words, NSD stated that expedition is permitted under prongs (i) and (ii) above, but ignored prongs (iii) and (iv).[1] Given that American Oversight had not requested expedition under prong (i) or (ii), it is therefore not surprising that NSD concluded that American Oversight had not established a need for expedited processing.

NSD's response did not indicate whether the Director of the Office of Public Affairs had taken any position on expedition under prong (iv). More than 10 days have passed since the AO FOIA Request was submitted, and American Oversight has received no indication from the NSD or

---

[1] To be clear, the Freedom of Information Act itself provides that agencies must provide for expedited processing in cases in which the requester demonstrates a compelling need for the information, and further clarifies that "compelling need" is defined consistent with prongs (i) and (ii) above. *See* 5 U.S.C. § 552(a)(6)(E)(i)(I), (v)(I)-(II). However, it further provides for expedited processing of requests "in other cases determined by the agency," *5 U.S.C. § 552* (a)(6)(E)(i)(II), and DOJ has determined that prongs (iii) and (iv) above justify expedited processing, *see* 28 C.F.R. § 16.5(e)(1)(iii)-(iv).

2

Office of Public Affairs regarding whether its request for expedited review under prong (iv) has been granted. Had DOJ applied the appropriate standard under DOJ regulations, DOJ would have concluded that American Oversight's request was entitled to expedited processing.

In its request, American Oversight certified to be true and correct to the best of its knowledge and belief, that there is widespread and exceptional media interest in the subject of the request and there exist possible questions concerning the government's integrity, which affect public confidence.

First, at the time of this request, there had been widespread and exceptional media interest in Mr. Trump's allegations that then-President Barack Obama directed the tapping of the communications of Mr. Trump and persons affiliated with his campaign for purposes related to the 2016 presidential election,[2] and in the allegations that Mr. Trump and his campaign affiliates had contacts with Russian officials, and that those contacts are under investigation.[3] Since the

---

[2] *See, e.g.*, Philip Rucker et al., *Trump Accuses Obama of 'Nixon/Watergate' Wiretap – But Offers No Evidence*, WASH. POST, Mar. 4, 2017, https://www.washingtonpost.com/politics/trump-accuses-obama-of-nixonwatergate-wiretap--but-offers-no-evidence/2017/03/04/1ddc35e6-0114-11e7-8ebe-6e0dbe4f2bca_story.html?hpid=hp_hp-top-table-main_trumpwiretap-8pm%3Ahomepage%2Fstory&tid=a_inl&utm_term=.c2ab0fcc0033; Elliot Smilowitz, *Trump Accuses Obama of Wiretapping Trump Tower*, THE HILL (Mar. 4, 2017, 6:51 AM), http://thehill.com/homenews/administration/322337-trump-accuses-obama-of-wiretapping-trump-tower; Jeremy Diamond et al., *Trump's Baseless Wiretap Claim*, CNN (Mar. 5, 2017, 6:59 AM), http://www.cnn.com/2017/03/04/politics/trump-obama-wiretap-tweet/.

[3] *See, e.g.*, Adam Entous et al., *Sessions Met with Russian Envoy Twice Last Year, Encounters He Later Did Not Disclose,"* WASH. POST, Mar. 1, 2017, https://www.washingtonpost.com/world/national-security/sessions-spoke-twice-with-russian-ambassador-during-trumps-presidential-campaign-justice-officials-say/2017/03/01/77205eda-feac-11e6-99b4-9e613afeb09f_story.html; Brooke Seipel, *Bush's Ethics Lawyer On Sessions Talks with Russia Ambassador: 'Good Way To Go To Jail,'* THE HILL BLOG (Mar. 1, 2017, 10:34 PM), http://thehill.com/blogs/blog-briefing-room/news/321936-ethics-lawyer-to-george-w-bush-on-sessions-talks-with-russa; David E. Sanger, *Harry Reid Cites Evidence of Russian Tampering in U.S. Vote, and Seeks F.B.I. Inquiry*, N.Y. TIMES, Aug. 29, 2016, https://www.nytimes.com/2016/08/30/us/politics/harry-reid-russia-tampering-election-fbi.html; Julie Hirschfeld Davis et al., *Trump National Security Adviser Called Russian Envoy Day Before Sanctions Were Imposed*, N.Y. TIMES, Jan. 13, 2017, https://www.nytimes.com/2017/01/13/us/politics/donald-trump-transition.html; Margaret Hartmann, *What We Know About the Investigations Into Trump's Russia Scandal*, N.Y. MAG. (Mar. 7, 2017), http://nymag.com/daily/intelligencer/2017/03/what-we-know-about-the-probes-into-trumps-russia-scandal.html; Karen Demirjian et al., *Attorney General Jeff Sessions Will Recuse Himself from Any Probe Related to 2016 Presidential Campaign*, WASH. POST, Mar. 2, 2017, https://www.washingtonpost.com/powerpost/top-gop-lawmaker-calls-on-sessions-to-recuse-himself-from-russia-investigation/2017/03/02/148c07ac-ff46-11e6-8ebe-

3

request was filed, Mr. Trump and his associates have stuck by their allegations of wiretapping, and there has been extensive media coverage on all aspects of this issue.[4]

The requested documents will shed light on these issues of considerable interest to the public. Both the allegation that Mr. Obama improperly instituted wiretaps for electoral purposes and the possibility that investigations established national security or criminal bases to seek court ordered wiretapping of Mr. Trump and persons affiliated with his campaign similarly raise questions about whether either the current or former president or their associates acted unlawfully and about the integrity of the 2016 presidential election. There can be no doubt that these are matters "in which there exist possible questions about the government's integrity that affect public confidence."[5]

Accordingly, American Oversight's request satisfied the criteria for expedition, and DOJ should reverse its initial determination on this issue. Additionally, American Oversight asks that this appeal be handled on an expedited basis pursuant to the criteria of 28 C.F.R. § 16.5(e)(1)(iv), which is addressed above.

## Appeal of NSD's April 3rd *Glomar* Response

American Oversight appeals NSD's refusal to confirm or deny the existence of records responsive to American Oversight's FOIA request pursuant to *5 U.S.C. § 552(b)(1)*.

On the substance of American Oversight's request, NSD did not provide any records, nor did NSD indicate that it was withholding any records because of the application of any exemptions permitted under FOIA. Rather, NSD responded with what is known as a "Glomar" response to our request, stating that it "can neither confirm nor deny the existence of records" responsive to our request because doing so would "reveal information properly classified under Executive Order 13526." Specifically, the NSD acknowledged that it "maintains operational files which document requests for and approvals of authority for the U.S. Intelligence Community to conduct certain foreign intelligence activities," but stated that it could not search those records for information responsive to our request because to confirm or deny the existence of such materials "would tend

---

6e0dbe4f2bca_story.html?hpid=hp_hp-top-table-main_gopreax-840a%3Ahomepage%2Fstory&tid=ptv_rellink&utm_term=.1edd2d00bd99.

[4] *See, e.g.*, Nolan McCaskill, *Trump Claims Wiretap Tweet 'Is Turning Out to Be True,'* POLITICO (Apr. 3, 2017, 8:13 AM), http://www.politico.com/story/2017/04/trump-surveillance-financial-times-interview-236819; Michael Shear & Julie Hirschfeld Davis, *Sean Spicer Repeats Trump's Unproven Wiretapping Allegation*, N.Y. TIMES, Mar. 31, 2017, https://www.nytimes.com/2017/03/31/us/politics/sean-spicer-trump-wiretapping.html; Philip Bump, *The Latest Attempt to Validate Trump's Wiretapping Claim? An Obama Official Who Left in 2015*, WASH. POST, Mar. 31, 2017, https://www.washingtonpost.com/news/politics/wp/2017/03/31/the-latest-attempt-to-validate-trumps-wiretapping-claim-an-obama-official-who-left-in-2015/?utm_term=.76064308d2b3.

[5] 28 C.F.R. § 16.5(e)(1)(iv).

DOJ-17-0035

to reveal properly classified information regarding whether particular surveillance techniques have or have not been used by the U.S. Intelligence Community."

It is NSD's burden to sustain the validity of its actions under FOIA. *See* 5 U.S.C. § 552(a)(4)(B) (the "burden is on the agency to sustain its actions"). To be sure, the government may be entitled to "refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence it itself classified under [Executive Order 13,526] or its predecessors."[6] To support such a claim—known as a "Glomar" response—the agency would be required to make a particularized showing that justified the refusal to either confirm or deny the existence of responsive records.

But whatever the classification status of FISA wiretapping orders or NSD's operational files in general, the question here is whether the existence or nonexistence of the records sought by the AO FOIA Request remains properly classified after two quite senior government officials have publicly addressed the existence or nonexistence of those records. A so-called "Glomar" response is not appropriate if the government "has already disclosed the fact of the existence (or nonexistence) of responsive records."[7] Courts have long held that when the government officially acknowledges information, the government can no longer claim that the acknowledged information is exempt from disclosure under FOIA.[8] Accordingly, NSD cannot refuse to confirm or deny the existence or nonexistence of responsive records where senior government officials have already officially acknowledged the existence or nonexistence of such records. In this case, remarkably, senior government officials have done both.

Similar to the fact pattern recently addressed by the D.C. Circuit,[9] here, the "President of the United States himself publicly acknowledged" the existence of responsive records when he officially acknowledged that the federal government instituted wiretaps on communications at Trump Tower. Specifically, the president stated that he "[j]ust found out that Obama had my 'wires tapped' in Trump Tower just before the victory. Nothing found."[10] Mr. Trump further elaborated, "[i]s it legal for a sitting President to be 'wire tapping' a race for president prior to an

---

[6] Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).

[7] *ACLU v. CIA*, 710 F.3d 422, 427, 432 (D.C. Cir. 2013); *see also N.Y. Times v. U.S. Dep't of Justice*, 756 F.3d 100, 121-23 (2d Cir. 2014).

[8] *See, e.g., ACLU*, 710 F.3d at 426 (when the government "has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information"); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim."); *see also Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).

[9] *ACLU*, 710 F.3d at 430.

[10] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:35 AM), https://twitter.com/realDonaldTrump/status/837989835818287106.

DOJ-17-0035

election? Turned down by court earlier";[11] "I'd bet a good lawyer could make a great case out of the fact that President Obama was tapping my phones in October, just prior to Election!";[12] and "How low has President Obama gone to tapp [sic] my phones during the very sacred election process."[13] When asked about the basis for Mr. Trump's assertions, the White House stated, "He's the president of the United States. He has information and intelligence that the rest of us do not."[14] The president is the highest authority in the executive branch and undoubtedly has the authority to officially acknowledge facts that might otherwise be exempt from disclosure under FOIA because of classification.

The existence of an official acknowledgement of the wiretapping by the president precludes NSD's resort to a so-called "Glomar" response, "neither confirm[ing] nor deny[ing]" the existence of the same wiretapping. Regardless of whether confirming or denying the existence of such wiretaps prior to the president's acknowledgement would have disclosed properly classified facts, now that the president has officially acknowledged the activity, by definition the existence of those wiretaps is no longer classified. Accordingly, NSD cannot appropriately decline to confirm or deny the existence of facts that the president has already acknowledged. As the courts have recognized, a Glomar response is not appropriate when the government "has already disclosed the fact of the existence (or nonexistence) of responsive records."[15]

NSD's refusal to address whether it has responsive records is all the more troubling here, where not only the president but also the Director of the Federal Bureau of Investigation have publicly addressed the question of whether wiretapping of associates of Mr. Trump at Trump Tower did, in fact, occur. In a hearing before the Permanent Select Committee on Intelligence in the House of Representatives, FBI Director James Comey publicly stated that he had "no information" to support Mr. Trump's claims that Mr. Trump and his associates were wiretapped at Trump Tower by former President Barack Obama.[16] Mr. Comey's willingness to testify on the record at an open hearing about the existence or nonexistence of evidence of wiretapping of Mr. Trump's associates at Trump Tower belies NSD's assertion that the existence or non-existence of those same records remains classified.

---

[11] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:49 AM), https://twitter.com/realDonaldTrump/status/837993273679560704.

[12] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 3:52 AM), https://twitter.com/realdonaldtrump/status/837994257566863360.

[13] Donald Trump (@realDonaldTrump), TWITTER (Mar. 4, 2017, 4:02 AM), https://twitter.com/realDonaldTrump/status/837996746236182529.

[14] *White House Officials Stand By Trump Wiretapping Claim*, FOXNEWS.COM, Mar. 6, 2017, http://www.foxnews.com/politics/2017/03/06/white-house-officials-stand-by-trump-wiretapping-claim.html.

[15] *ACLU*, 710 F.3d at 427.

[16] *See* Stephen Collinson, *FBI: Trump Campaign, Russia Ties Investigated, No Wiretap Evidence Found*, CNN POLITICS (Mar. 21, 2017, 12:41 PM), http://www.cnn.com/2017/03/20/politics/comey-hearing-russia-wiretapping/index.html.

DOJ-17-0035

Now the public is in the surreal and bewildering position of confronting conflicting acknowledgements regarding the existence or nonexistence of the same records. Different government entities have simultaneously acknowledged both the existence of the requested records and the non-existence of the same records. While it is obviously true that only one of those statements can be correct (there either was or was not wiretapping conducted of Trump Tower by the Obama administration), it is evident that neither the president nor the FBI Director believes that the truth or falsity of that fact is classified and therefore protected from disclosure.

For the foregoing reasons, NSD's declination to search its operational files and its refusal to either confirm or deny the existence of records responsive to American Oversight's FOIA request failed to meet its legal obligations under FOIA. Rather, given the government's official acknowledgements regarding the surveillance of Trump Tower, NSD is obligated to continue to expeditiously process American Oversight's FOIA request by searching for and processing all responsive records. American Oversight therefore respectfully requests that OIP reject NSD's resort to a "Glomar" response to its request.

<u>Conclusion</u>

Thank you for your consideration of this appeal. As provided in 5 U.S.C. § 552(a)(6)(A)(ii), we look forward to your determination on our appeal within twenty working days.

For questions regarding any part of this appeal or the underlying request for records, please contact Sara Creighton at <u>foia@americanoversight.org</u> or 202-869-5246.

Respectfully submitted,

Austin R. Evers
Executive Director
American Oversight

DOJ-17-0035

# *Exhibit D*



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

Mr. Austin R. Evers
American Oversight
Suite B255
1030 15th Street, NW
Washington, DC  20005
foia@americanoversight.org

Re:  Appeal No. DOJ-AP-2017-003494
Request No. 17-116
SRO:DRC

**VIA:  FOIAonline**

Dear Mr. Evers:

You appealed from the action of the National Security Division (NSD) on your Freedom of Information Act request for access to records concerning wiretaps or intercepts of communications to or from presidential candidate Donald Trump or others associated with Mr. Trump's campaign from June 1, 2015 to present.  I note that you also appealed NSD's denial of your request for expedited processing of your request.

After carefully considering your appeal, I am affirming NSD's action on your request.  I have determined that NSD properly refused to confirm or deny the existence of any records responsive to your request because the existence or nonexistence of any responsive records is currently and properly classified.  See 5 U.S.C. § 552(b)(1).  However, I am referring this matter to the Department of Justice's Department Review Committee so that it may determine if the existence or nonexistence of any responsive records should remain classified under Executive Order No. 13,526.  You will be informed of the Department's final decision on this matter.  This referral does not affect your right to pursue litigation.

With regard to your appeal of NSD's denial of your request for expedited processing, please be advised that NSD responded to your request by letter dated April 3, 2017.  Because NSD responded to your request, your appeal from NSD's failure to grant expedited processing of your request is moot.  Your request for expedited processing of your appeal is likewise moot, because I am responding to your appeal within ten days.

Please be advised that this Office's decision was made only after a full review of this matter.  Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of NSD in response to your request.  If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

- 2 -

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

4/13/2017

X _____

Sean R. O'Neill
Chief, Administrative Appeals Staff
Signed by: OIP